PEOPLE v MACK

Docket No. 78-3703. Submitted June 12, 1980, at Detroit.—Decided September 15, 1980. Leave to appeal denied, 410 Mich 875.

George E. Mack was convicted of first-degree felony murder and possession of a firearm in the commission of a felony, Recorder's Court of Detroit, Keith J. Leenhouts, J. He appeals, alleging that the trial court erred in denying his motion to suppress evidence seized in a warrantless search of the home in which he was staying. *Held:*

Defendant had a reasonable expectation of privacy in the premises searched and, thus, has standing to challenge the search. The trial court erred in denying his motion to suppress the evidence seized in the search of the premises.

Reversed and remanded.

BASHARA, P.J., dissented. He would hold that the trial court's ruling that the defendant did not have a reasonable expectation of privacy in the place of the search was not clearly erroneous. The defendant failed to establish that he had a legitimate or reasonable expectation of privacy in the premises in that he had no property rights in them, did not exercise exclusive control over them, and did not take normal precautions to maintain his privacy. He would affirm.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — STANDING TO CHALLENGE SEARCHES — LEGITIMATE EXPECTATION OF PRIVACY — CRIMINAL LAW.
   A defendant in a criminal case may challenge a search only if he has a legitimate expectation of privacy in the searched area.

DISSENT BY BASHARA, P.J.

2. PRIVACY — LEGITIMATE EXPECTATION — SOURCE OF EXPECTATION — CRIMINAL LAW.
   *A legitimate expectation of privacy by definition means more than a subjective expectation of not being discovered and must have a source outside of the Fourth Amendment for legitima-*

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 16 *et seq.*

tion, *either by reference to concepts of real or personal property or to understandings that are recognized and permitted by society, such as the right to exclude others; but such an interest may be insufficient to establish the expectation with respect to particular items located on or activity conducted upon a premises.*

3. PRIVACY — LEGITIMATE EXPECTATION — CRIMINAL LAW.

*The reasonableness of an asserted expectation of privacy in challenging a search should be determined by considering whether the person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy, the way in which he used the location, including whether he exercised exclusive control over the searched premises, whether the framers of the Fourth Amendment considered such a search an unjustifiable intrusion, and whether his property rights, as recognized generally in society, give him the right to act as he wishes in certain premises.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Dianne M. Odrobina,* Assistant Prosecuting Attorney, for the people.

*John C. Mouradian,* for defendant on appeal.

Before: BASHARA, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

D. C. RILEY, J. Defendant was convicted of first-degree felony murder, MCL 750.316; MSA 28.548, and of possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2).

Defendant appeals as of right, alleging two errors, one of which we hold requires reversal.

Defendant correctly argues that the court erred in denying his motion to suppress evidence seized in a warrantless search of the home where he was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

staying. Although the search was conceded to be improper, the trial court ruled that defendant was without sufficient proprietary or possessory interest in the home to have standing to invoke the exclusionary rule.

At the evidentiary hearing, testimony revealed that the house belonged to defendant's mother and was occupied by his cousin. Defendant was not present when the search took place, but he had been living there for approximately two weeks. Although defendant maintained another address where he received his mail, he had some of his clothing at his mother's home and was free to come and go as he pleased.

In *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), the Supreme Court established a test for determining standing to dispute a search and seizure.[1] A defendant may challenge a search only if he has a legitimate expectation of privacy in the searched area.

In the instant case, defendant had an expectation of privacy in his mother's house. We believe that this expectation was reasonable, based on his having lived there for approximately two weeks, his keeping some clothes there, and his cousin's full acceptance of his freedom to come and go at will.

In *People v Mason,* 22 Mich App 595; 178 NW2d 181 (1970), this Court found, on nearly identical facts, that the defendant had standing to dispute the contested search. Although that case was de-

---

[1] This new concept of standing has been explained further in *United States v Salvucci,* — US —; 100 S Ct 2547; 65 L Ed 2d 619 (1980), *Rawlings v Kentucky,* — US —; 100 S Ct 2556; 65 L Ed 2d 633 (1980). It replaces the earlier standard enunciated in *Jones v United States,* 362 US 257, 267; 80 S Ct 725; 4 L Ed 2d 697 (1960), "that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him".

cided under the "legitimately on the premises" test of *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960), repudiated by *United States v Salvucci,* — US —; 100 S Ct 2547; 65 L Ed 2d 619 (1980), we believe that it, like this case, would have the identical result under the *Rakas* "legitimate expectation of privacy test". The instant court erred, therefore, in its denial of the defendant's motion to suppress.

Reversed and remanded.

E. A. QUINNELL, J., concurred.

BASHARA, P.J. *(dissenting).* I respectully dissent. The trial court's ruling that the defendant did not have a reasonable expectation of privacy in the place of the search is not clearly erroneous.

Defendant was allegedly living with his cousin, Robert Taylor, at the time of the search. The searched house was owned by defendant's mother and rented by Taylor for a period of several years. Taylor testified at the suppression hearing that the defendant had been visiting him for about a week when the search occurred. Taylor's girlfriend, who also occupied the premises, estimated that defendant had been staying with them about two weeks. The defendant did not pay rent because he was "just visiting".

Taylor further testified that the defendant was the sole occupant of the bedroom where the disputed evidence was seized. However, Taylor also kept clothing in the closet where the evidence was found, along with defendant's clothing. The bedroom belonged to Taylor's daughter, who was temporarily sleeping in another bedroom with two other children.

When the defendant arrived at the Taylor residence, he brought three or four suits of clothing.

No other items were moved from his permanent home except the seized gun.

The testimony established that, during the one or two week visit, the defendant did not always return to the Taylor residence to sleep. The night before the search was cited by Taylor as being one instance that the defendant did not return. The defendant did not return to the premises after the search.

I agree with the majority opinion in that it relies on the legitimate expectation of privacy test for determining whether the defendant has standing to object to the search and seizure. The standard was most recently reiterated in *Rakas v Illinois,* 439 US 128, 143-144, fn 12; 99 S Ct 421; 58 L Ed 2d 387 (1978), *reh den* 439 US 1122; 99 S Ct 1035; 59 L Ed 2d 83 (1979). The majority opinion in *Rakas* illuminates application of the standard as follows:

"Obviously, however, a 'legitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' His presence, in the words of *Jones,* 362 US, at 267 [4 L Ed 2d 697; 80 S Ct 725; 78 ALR2d 233], is 'wrongful'; his expectation is not 'one that society is prepared to recognize as "reasonable." ' *Katz v United States,* 389 US, at 361 [19 L Ed 2d 576; 88 S Ct 507 (1967)], (Harlan, J., concurring). And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the

main rights attaching to property is to exclude others, see W. Blackstone, Commentaries, Book 2, ch 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones, supra,* and *Katz, supra.* But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment. No better demonstration of this proposition exists than the decision in *Alderman v United States,* 394 US 165 [22 L Ed 2d 176; 89 S Ct 961] (1969), where the court held that an individual's property interest in his own home was so great as to allow him to object to electronic surveillance of conversations emanating from his home, even though he himself was not a party to the conversations. On the other hand, even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon." (Citations omitted.)

Justice Powell, in a concurring opinion, sheds further light on the application of the legitimate expectation of privacy test. Although "* * * no single factor invariably will be determinative", Justice Powell defines the reasonableness of an asserted expectation of privacy as including the following considerations: (1) whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy, (2) the way in which a defendant uses a location, including whether he has exclusive control over the searched premises, (3) whether history supports defendant's position that the framers of the

Fourth Amendment considered such a search an unjustifiable intrusion, and (4) whether the defendant's property rights, as recognized generally in society, give the defendant the right to act as he wishes in certain premises. 439 US 128, 152-153.

Review of the record leads me to believe that defendant has failed to establish that he had a legitimate expectation of privacy in his cousin's home. He certainly had no property rights in the premises, being a mere gratuitous visitor. He did not have exclusive control over the bedroom, since property belonging to other people was kept there. He did not lock the bedroom or place the gun in a secure place. Rather, it was placed in the closet where his cousin kept his clothes. Although the defendant may have possessed a "subjective expectation of not being discovered", *Rakas, supra,* 143, fn 12, the expectation was not legitimate or reasonable.

The second issue raised by defendant is completely devoid of merit.

I would affirm the conviction.